IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caitlin Bartness Wilenchik, a single woman,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael Ryan and Jane Doe Ryan, husband and wife; City of Tucson,<br><br>　　　　Defendants. | No. CIV 10-541 TUC DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the court is the defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), FED.R.CIV.P.  (Doc. 3)

The plaintiff in this case claims the defendant police officer used excessive force against her when performing a traffic stop of her motor vehicle.  The defendants move that this court dismiss the case because the officer has qualified immunity and because the plaintiff's alleged injuries are insufficient as a matter of law.

The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

A hearing on the motion was held on Tuesday, November 30, 2010.  The motion should be denied.  Although the plaintiff's injuries were not extensive, her allegations are sufficient to make out a claim for excessive force.  Assuming the plaintiff's allegations are true, the defendant officer is not entitled to qualified immunity.

1 FACTUAL AND PROCEDURAL BACKGROUND

2 Wilenchik claims Tucson Police Officer Ryan employed excessive force when he
3 performed a traffic stop of her vehicle. Because this is a motion to dismiss, the court assumes
4 all factual allegations raised in the complaint are true. *Knevelbaard Dairies v. Kraft Foods,*
5 *Inc.*, 232 F.3d 979, 984 (9th Cir. 2000).

6 On January 17, 2010, the defendant, Ryan, stopped Wilenchik's vehicle for making an
7 improper left turn. (Complaint, p. 3.) During the ensuing traffic stop, Ryan "pointlessly asked
8 Ms. Wilenchik questions unrelated to the traffic stop," "harassed and belittled her," called her
9 a "liar," and scolded her for "not taking the matter seriously." *Id.*, pp. 3-4.

10 Although the temperature "was a chilling 42 degrees Fahrenheit and Ms. Wilenchik was
11 not properly dressed for prolonged outside exposure," Ryan refused to provider her shelter or
12 allow her to retrieve heavier clothing from her nearby sorority house. *Id.*, p. 4. At some point,
13 Ryan "needlessly and violently grabbed Ms. Wilenchik's arms and slapped handcuffs on her
14 too tightly, causing bruising and swelling to Ms. Wilenchik's wrists and arms without any care
15 or concern at all about her physical well being." *Id*.

16 At the time of the incident, Wilenchik was 19 years old, five foot six inches tall, and
17 weighed one-hundred twenty-five pounds. *Id*. She was not uncooperative, intoxicated, violent,
18 or acting in a threatening manner. *Id*.

19 After approximately one hour, Officer William Honomichl arrived to administer a
20 Preliminary Breath Test (PBT). *Id.*, p. 4. "The PBT registered a nominal reading" and
21 Wilenchik was released at the scene. *Id.*, p. 5. Wilenchik was later charged with being a
22 "minor in consumption of alcohol" pursuant to A.R.S. §§ 4-244.34 and 4-244.41. *Id*.

23 On August 27, 2010, Wilenchik filed a complaint in Pima County Superior Court
24 alleging that Ryan used excessive force during the traffic stop. Her complaint raises five
25 separate causes of action: negligence, assault, battery, intentional infliction of emotional
26 distress, and 42 U.S.C. § 1983 – excessive force. (Complaint.)

27 On September 7, 2010, the defendants removed the action to U.S. District Court. On
28 September 16, 2010, they filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

They argue Ryan has qualified immunity and the harm alleged by Wilenchik is insufficient as a matter of law to support a claim for excessive force. They further argue Wilenchik did not make out a viable claim against the City of Tucson.

Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 1965 (internal punctuation omitted).

DISCUSSION

"Use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Tekle v. U.S.*, 511 F.3d 839, 844-845 (9th Cir. 2007). "In determining whether the force used was reasonable, [the court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal punctuation removed)

"The first factor in determining whether the force used was excessive is the severity of the force applied." *Id.* "The second factor, and the most important, is the need for the force." *Id.* "Factors to be considered in determining the need for the force include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal punctuation omitted). "Finally, we must balance the force used against the need, to determine whether the force used was greater than is reasonable under the circumstances." *Id.*

In this case, the defendants argue the level of force alleged by Wilenchik is insufficient as a matter of law to constitute an excessive force claim. They take the position that if the

1 amount of force alleged is sufficiently low, the claim may be dismissed without considering the
2 second prong of the force analysis.

3 The defendants support their argument with citations to caselaw in the Third, Fifth, and
4 Tenth Circuits. In those circuits, there is a body of caselaw that supports the defendants'
5 position that there is a threshold level of force that must be alleged to support an excessive force
6 claim. *See, e.g., Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("[M]inor, incidental
7 injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise
8 to a constitutional claim for excessive force."); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th
9 Cir. 2007) ("We believe that a claim of excessive force requires some actual injury that is not
10 de minimis, be it physical or emotional.").

11 In the Ninth Circuit, however, there is no similar body of caselaw. *See Wilks v. Reyes*,
12 5 F.3d 412, 416 (9th Cir. 1993) (rejecting Fifth Circuit caselaw that "plaintiffs must show
13 "significant injury" to establish an excessive force claim under the Fourth Amendment"); *see*
14 *also Titran v. Ackman*, 893 F.2d 145, 147 n. ** (7th Cir. 1990) (rejecting the Fifth Circuit's
15 "significant injury"requirement). In fact, the Ninth Circuit has explicitly held that "overly tight
16 handcuffing can constitute excessive force." *See Wall v. County of Orange*, 364 F.3d 1107,
17 1112 (9th Cir. 2004). Accordingly, this court will analyze Wilenchik's excessive force claim
18 by applying the standard two-pronged balancing test.

19 It is instructive to examine two cases in the Ninth Circuit with facts similar to those in
20 the instant case: *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993) and *Meredith v. Erath*, 342
21 F.3d 1057 (9th Cir. 2003).

22 In *Palmer*, the plaintiff, who had been stopped on suspicion of driving while intoxicated,
23 alleged the defendant deputy sheriff "jerked" him out of his car and handcuffed him "tight
24 enough to cause pain and discoloration to his wrists, and that [the defendant] refused his request
25 to loosen them." *Palmer*, 9 F.3d at 1434-35. The plaintiff alleged the handcuffs caused him
26 "pain and left bruises that lasted for several weeks." *Id.* at 1436. The Ninth Circuit held that
27 the defendant deputy was not entitled to qualified immunity and the plaintiff's allegations, if
28 true, would constitute excessive force in violation of the Fourth Amendment. *Id.*

- 4 -

In *Meredith*, the plaintiff, whose house was being searched pursuant to a search warrant, alleged the defendant "grabbed her by the arms, forcibly threw her to the ground and twisting her arms, placed handcuffs on her wrists," which were so tight "they caused her pain, and that she suffered extensive bruising by the force used against her." *Meredith,* 342 F.3d at 1060. Although she complained that the handcuffs were too tight, they were not loosened for 30 minutes. *Id.* The Ninth Circuit held that the defendant was not entitled to qualified immunity on the plaintiff's excessive force claim. *Id.* at 1061.

In light of these cases, the court cannot conclude that Wilenchik's allegations are insufficient as a matter of law to support a claim for excessive force. On the first prong of the analysis, Wilenchik alleges the defendant, Ryan, "needlessly and violently grabbed Ms. Wilenchik's arms and slapped handcuffs on her too tightly, causing bruising and swelling to Ms. Wilenchik's wrists and arms without any care or concern at all about her physical well being."[1] (Complaint.) She further alleges he exposed her to "chilling 42 degrees Fahrenheit" conditions and refused to provider her shelter or allow her to retrieve heavier clothing even though she "was not properly dressed for prolonged outside exposure." *Id.*

As to the second prong of analysis, Wilenchik alleges she was detained for a minor traffic violation. *Id.* At the time of the incident, Wilenchik was 19 years old, five feet six inches tall, and weighed one-hundred twenty-five pounds. *Id.* She was not uncooperative, intoxicated, violent, or acting in a threatening manner. *Id.* The crime at issue was not severe. Wilenchik posed no threat to the safety of officer Ryan and was neither resisting arrest nor attempting to flee. Accordingly, the need for force was at a minimum.

Based on these allegations, the court cannot conclude that the level of force employed by Ryan was, as a matter of law, reasonable under the circumstance. Accordingly, Wilenchik's

---

[1] In her response to the defendants' motion, Wilenchik asserts that Ryan "refused to loosen the handcuffs after she complained of pain." (Plaintiff's response, p. 7.) She does not, however, indicate where in the complaint this allegation appears.

- 5 -

1 factual allegations are sufficient to "raise a right to relief above the speculative level" and the
2 motion to dismiss should be denied. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,
3 127 S.Ct. 1955, 1965 (2007).

4 The defendant, Ryan, argues in the alternative that he is entitled to qualified immunity.
5 "Qualified immunity shields an officer from suit when [he] makes a decision that, even if
6 constitutionally deficient, reasonably misapprehends the law governing the circumstances [he]
7 confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599 (2004). An officer
8 is not entitled to qualified immunity if (1) "taken in the light most favorable to the party
9 asserting the injury, the facts alleged show the officer's conduct violated a constitutional right"
10 and (2) "the right violated was clearly established such that it would be clear to a reasonable
11 officer that his conduct was unlawful in the situation he confronted." *Davis v. City of Las
12 Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007) (internal punctuation omitted).

13 In this case, the court concludes that Ryan's use of force, as alleged in the complaint,
14 violated Wilenchik's Fourth Amendment right to be free from excessive force. (See above).
15 The cases cited above indicate that it would be clear to a reasonable officer that the force
16 allegedly employed was unlawful. Wilenchik was stopped for a minor traffic violation. While
17 Ryan may have suspected she had been driving while under the influence, once she was
18 stopped, the possibility of danger to the community was effectively eliminated. Wilenchik was
19 not uncooperative, intoxicated, violent, or acting in a threatening manner. She posed no threat
20 to the safety of officer Ryan and was neither resisting arrest or attempting to flee. Under these
21 circumstances, the need for force was at a minimum. It would be clear to a reasonable officer
22 that the force Ryan allegedly used against Wilenchik was excessive. *See, e.g., Wall v. County
23 of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th
24 Cir. 2003); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993).

25 Finally, the defendants maintain Wilenchik has not made out a viable claim against the
26 City of Tucson.

27 "[M]unicipalities are 'persons' subject to damages liability under section 1983 where
28 'action pursuant to official municipal policy of some nature causes a constitutional tort.'"

- 6 -

*Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). "[T]he municipality itself must cause the constitutional deprivation." *Id.* "[A] city may not be held vicariously liable under the theory of respondeat superior." *Id.*

"A section 1983 plaintiff may establish municipal liability in one of three ways." *Id.* "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Id.* (internal punctuation omitted) "Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Id.* "Whether a particular official has final policy-making authority is a question of state law." *Id.* "Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346-47.

In her complaint, Wilenchik alleges as follows:

> It is believed this may be a common practice for officers of the city to lie in wait for students late at night and to inflict such abuse and punishment, finding alleged minor pretexts to conduct themselves in this manner.

(Complaint, p. 5.) Wilenchik alleges that Ryan acted in accordance with a longstanding practice or custom of the City of Tucson. She has made out a viable claim against the City of Tucson under *Monell*.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

Denying the defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), FED.R.CIV.P. (Doc. 3)

1  Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within
2 14 days of being served with a copy of this Report and Recommendation.  If objections are not
3 timely filed, they may be deemed waived.
4  The Clerk is directed to send a copy of this Report and Recommendation to the parties
5 or their counsel.
6  DATED this 6th day of December, 2010.

_____
Glenda E. Edmonds
United States Magistrate Judge